# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-10-00552-CR

**Bobby Joe Stovall, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 26TH JUDICIAL DISTRICT
### NO. 09-999-K26, HONORABLE BILLY RAY STUBBLEFIELD, JUDGE PRESIDING

## O P I N I O N

A jury found Bobby Joe Stovall guilty of driving while intoxicated (DWI), enhanced to a first-degree felony by previous convictions. *See* Tex. Penal Code Ann. §§ 12.42 (West Supp. 2010), 49.04 (West 2003), 49.09 (West Supp. 2010). The trial court assessed punishment at life imprisonment. On appeal, Stovall contends that the trial court erred in denying his motion to suppress evidence obtained pursuant to a search warrant for the seizure of his blood. We affirm the judgment of conviction.

## BACKGROUND

On the evening of July 3, 2009, officers from the Round Rock Police Department were dispatched to a vehicle collision on State Highway 79, near the Dell Diamond baseball field in Round Rock, Texas. An accident had occurred in the heavy traffic following a Round Rock Express baseball game and subsequent fireworks show, and one of the vehicles involved had left the

scene. Officer Jason Huf was one of the first to arrive, at which time he saw a red Ford Focus stopped in the entrance of a grocery store parking lot off the highway. The car's passenger side was severely damaged. Beside the driver side door stood Bobby Joe Stovall, the registered owner of the car.[1]

Huf approached Stovall, who explained to the officer that he had been trying to turn into the store's parking lot when another vehicle struck him. Huf noticed signs that Stovall was intoxicated; he later described Stovall as "having a hard time standing in place," "swaying back and forth," and having slurred speech and the smell of metabolized alcohol on his breath.[2] However, Huf determined that he should turn his attention to an injured passenger still inside the vehicle, and he asked for another officer to continue with Stovall.[3] According to Huf, when he was able to resume processing the crash report for the scene, he found inside the car a full can of malt liquor, an 18-pack of beer, and an empty beer can that was still cold and covered in condensation.

Officer Jack Johnson continued the questioning of Stovall for Huf, who suggested investigating for a potential DWI offense. Accordingly, Johnson led Stovall to a more remote portion of the parking lot and set the camera on his patrol car to record. Stovall again said that he was driving the Ford Focus toward the grocery store when he was hit. Stovall admitted to drinking

---

[1] The facts recited herein are taken from the testimony and exhibits admitted at trial.

[2] Witness Sylvia Martinez also testified that when she stopped to check on the occupants of the red car just after the accident, she saw Stovall step out of the driver's seat and could smell alcohol on his breath.

[3] Witnesses testified that a female passenger in Stovall's car had glass and blood on her face, appeared to be in shock, and had to be cut free of the car by the Fire Department. She was ultimately treated for cuts, bruises, and a concussion.

2

only two beers more than three hours earlier, but Johnson testified that he could smell alcohol on Stovall's breath, see him swaying back and forth, and hear that his speech was slurred.

Consequently, Johnson commenced the standardized field-sobriety tests. Administering the horizontal gaze nystagmus test, Johnson observed that Stovall had difficulty focusing enough to complete the test and ultimately exhibited six of six possible clues of intoxication.[4] On the nine-step walk-and-turn test, he noted that Stovall exhibited six of eight possible clues. On the one-leg stand test, Stovall exhibited three of four possible clues.

Johnson decided to test Stovall further, first asking him to count backward from the number 67 to 50, which Stovall could not manage. "I don't know if any two numbers made it in the right order," Johnson stated at trial. "We were from the 50s to the 40s to 55. We were all over the place." Lastly, Johnson asked Stovall to recite the alphabet, which he also failed to do. According to Johnson, "It was slurred, of course. But he might have got a few in the right order. But it was nothing to complete the ABC's." Johnson testified that, based on his experience and the totality of these results, he concluded that Stovall was intoxicated.

Johnson placed Stovall under arrest for DWI and read him the statutory warning about implied consent to a breath sample. *See* Tex. Transp. Code Ann. § 724.015 (West 2011) (listing disclosures that police must make to DWI suspects before requesting a breath sample). Stovall refused to give a sample or even sign the form, and he then began denying that he had driven the Ford Focus that evening. Johnson testified that, upon checking Stovall's criminal history and

---

[4] The horizontal gaze nystagmus test is a field-sobriety test that examines a suspect's eyes for inability to smoothly track a moving object. *See Emerson v. State*, 880 S.W.2d 759, 762 (Tex. 1994).

3

realizing that this DWI charge would be prosecuted as a felony, he determined that he should pursue a warrant to test Stovall's blood.[5] He offered Stovall another chance to give a breath sample voluntarily, and Stovall again refused.

After returning Stovall to Huf for transportation to the Williamson County Jail, Johnson prepared an affidavit of probable cause and a search warrant for signature by a magistrate. In part, the affidavit stated:

> My name is **Jack Johnson**, and I am commissioned as a peace officer and employed by the **Round Rock Police Department**.
>
> 1. There is in Williamson County, Texas, a suspected person described and located as follows:
>
> An individual named **Bobby Joe Stovall**, who . . . shall hereafter be called "suspected party." Suspected party is presently in custody at the Round Rock Police Department in Round Rock, Texas.
>
> 2. Said suspected party is presently in the control and custody of Affiant, who will present suspected party for purposes of execution of the warrant requested hereby.
>
> 3. It is the belief of Affiant that said suspected party has possession of and is concealing the following property: human blood.
>
> 4. It is the belief of Affiant, and he hereby charges and accuses that on or about **July 3, 2009, Bobby Joe Stovall** did then and there operate a motor vehicle in a public place while intoxicated by not having the normal use of mental or physical faculties by reason of the introduction of alcohol, controlled substance, drug, or a dangerous drug into the body.
>
> 5. On **July 3, 2009 at 10:34 p.m.**, the RRPD dispatcher dispatched Officer Huff [sic] of the Round Rock Police Department to a two car collision which had occurred

---

[5] This arrest occurred two months before the September 1, 2009, effective date of state legislation mandating a blood or breath sample where the driver has at least two prior convictions of DWI. *See* Tex. Transp. Code Ann. § 724.012 (West Supp. 2010).

4

in the 1700 block of East Palm Valley Blvd, which is a location in Williamson County, Texas. When Officer Huff [sic] arrived, he has told Affiant that he made contact with the defendant, **Bobby Joe Stovall**, and observed a strong odor of alcohol about his person, slurred speech, and that the defendant swayed while he was standing. An independent witness, Sylvia Martinez observed the collision and verbally identified Stovall as the driver of one of the vehicles. In addition, Stovall admitted to Affiant and Officer Huff [sic] that he had been driving. Affiant administered field sobriety tests to Stovall after dealing with others involved in the collision. The defendant performed poorly on the tests and exhibited 6 clues on the HGN test . . . .

After observing the suspected party during this contact and <u>his</u> performance on the field sobriety tests, I determined that <u>he</u> was intoxicated, and I placed <u>him</u> under arrest for Driving While Intoxicated. I requested a sample of <u>his</u> breath which suspected party refused to provide.

Affiant knows from previous experience and training that the above listed clues of intoxication indicate the person displaying the clues is often intoxicated. Affiant knows from previous experience and training that qualified laboratory personal [sic] such as those employed at the Texas Department of Public Safety, Crime Laboratory, can through testing, determine the alcohol concentration in [sic] individual by testing a sample of that individual's blood.

Wherefore, Affiant asks for a search warrant that will authorize Affiant or <u>his</u> agent to search the person of the suspected party for the property described above and seize the same as evidence that the offense described was committed and that suspected party committed said offense.

At 1:31 a.m. on July 4, a magistrate signed the affidavit and warrant, and Johnson proceeded to the jail, where a phlebotomist took a sample of Stovall's blood. A scientist at the Texas Department of Public Safety Crime Lab tested the sample and later testified as to the results, indicating that Stovall's blood alcohol concentration was .32 grams per 100 milliliters, four times the legal limit of .08 grams per 100 milliliters. *See* Tex. Penal Code Ann. §§ 49.01, .04 (West 2003).

Stovall was charged with felony DWI and with using his motor vehicle as a deadly weapon. Before trial, he filed a motion to suppress evidence pertaining to his blood sample and

toxicology results. At a hearing on his motion, Stovall argued that the search warrant for his blood was inadequately supported by probable cause because the affidavit failed to state the date and time of his alleged offense. This information was pertinent to the magistrate's determination that a blood test taken three hours after the arrest would reveal evidence of Stovall's alleged offense. The court denied Stovall's motion, and the blood-test evidence was admitted at trial.

After hearing the evidence, a jury found Stovall guilty of the DWI charge, but did not find that he used a deadly weapon during the offense. Stovall elected for the trial court to assess punishment, and the court ordered a pre-sentence investigation of the prior convictions used to enhance Stovall's offense to a first-degree felony. *See id*. § 12.42. The investigation revealed that Stovall had prior convictions of cocaine possession, driving while license suspended, credit card abuse, and burglary, along with eight prior convictions and one pending charge of DWI. The trial court assessed Stovall's punishment at imprisonment for life. Stovall now appeals on the grounds that the trial court erred in denying his motion to suppress.

**STANDARD OF REVIEW**

A trial court's ruling on a motion to suppress is reviewed on appeal for abuse of discretion. *Crain v. State*, 315 S.W.3d 43, 48 (Tex. Crim. App. 2010). Normally, we apply this standard in a bifurcated fashion, giving almost total deference to the trial court's determinations of fact, including witness credibility and demeanor, while reviewing de novo its applications of law. *State v. McLain*, 337 S.W.3d 268, 271 (Tex. Crim. App. 2011); *Crain*, 315 S.W.3d at 48. However, in the case of a motion to suppress based on the issuance of a search warrant, the trial court is constrained to the four corners of the affidavit and thus makes no credibility determinations.

6

*McLain*, 337 S.W.3d at 271. Consequently, a unique standard of review is applied when a motion to suppress is based on a magistrate's decision to issue a warrant. *State v. Webre*, 347 S.W.3d 381, 384 (Tex. App.—Austin 2011, no pet.). Both trial and appellate courts reviewing a magistrate's decision to issue a warrant apply a highly deferential standard reflecting the constitutional preference for searches to be conducted pursuant to a warrant as opposed to being warrantless. *McLain*, 337 S.W.3d at 271; *Rodriguez v. State*, 323 S.W.3d 55, 61 (Tex. Crim. App. 2007). Under this deferential review, the duty of the reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed. *State v. Jordan*, 342 S.W.3d 565, 569 (Tex. Crim. App. 2011) (quoting *Illinois v. Gates*, 462 U.S. 213, 238–39 (1983)).

As an appellate court reviewing an issuing magistrate's decision to issue a warrant, we too are constrained to the four corners of the affidavit. *Webre*, 347 S.W.3d at 382. However, we are not to analyze the affidavit in an hypertechnical manner. *Rodriguez*, 232 S.W.3d at 59. Rather, we interpret the affidavit in a "commonsensical and realistic manner, recognizing that the magistrate may draw reasonable inferences. When in doubt we defer to all reasonable inferences that the magistrate could have made." *Id*. at 61.

## DISCUSSION

*Denial of Motion to Suppress*

In his only point of error, Stovall claims that the trial court abused its discretion in denying his motion to suppress. Stovall claims the warrant for his blood sample was issued without probable cause because the affidavit in support of the warrant failed to state the date and time that the alleged DWI offense occurred. *See* Tex. Code Crim. Proc. Ann. art. 18.01(c) (West 2005).

7

Stovall argues that without this information the magistrate had no basis to conclude that a blood sample would reveal evidence of Stovall's guilt.[6]

Article 18.02 of the Texas Code of Criminal Procedure authorizes the issuance of a warrant to seize blood. *Id*. art. 18.02. The search warrant must be supported by an affidavit containing sufficient facts to show probable cause that: (1) a specific offense has been committed; (2) the items to be searched for and seized constitute evidence of that offense or that a particular person committed that offense; and (3) the items are located at or on the particular person, place, or thing to be searched. *Id.* art. 18.01(c). Probable cause exists when a magistrate has "a substantial basis for concluding that a search would uncover evidence of wrongdoing." *State v. Dugas*, 296 S.W.3d 112, 116 (Tex. App.—Houston [14th Dist.] 2009, pet. ref'd). A magistrate determines whether probable cause exists from the totality of the circumstances set forth in the affidavit. *See Jordan*, 342 S.W.3d at 570 (noting that the U.S. Supreme Court has instructed appellate courts "to review the 'totality of the circumstances' set forth within the four corners of the affidavit" (quoting *Gates*, 462 U.S. at 238)). While restricted to the contents of the four corners of the affidavit, the magistrate may construe those contents in a common-sense, non-technical manner and

---

[6] Stovall's proposition relies heavily on our opinion in *State v. Jordan*, 315 S.W.3d 660 (Tex. App.—Austin 2010), *rev'd,* 342 S.W.3d 565 (Tex. Crim. App. 2011). In that case, we held that an affidavit alleging the date of an offense only in the affiant's introductory statement, but not in the recitation of facts, failed to state probable cause. Stovall reasons that if the date and time were improperly set out in the fact allegations in the affidavit in his case, the magistrate would be left to rely on the date provided in the general accusation paragraph, which our *Jordan* opinion prohibited. However, as the State correctly notes, that opinion was reversed by the Texas Court of Criminal Appeals after Stovall submitted his brief in this appeal. *See State v. Jordan*, 342 S.W.3d 565, 567 (Tex. Crim. App. 2011). In its opinion, the court held that the affiant's introduction and the recitation of facts in an affidavit must not be considered separately and the introduction is a perfectly acceptable source of information as to date and time. *Id.* at 571.

draw reasonable inferences from the facts and circumstances they present. *Flores*, 319 S.W.3d at 702. In this case, given the totality of the circumstances set forth in the affidavit, we cannot agree that the magistrate lacked a substantial basis for concluding that Stovall's blood sample would uncover evidence of his alleged DWI offense.

First, the affidavit supporting the warrant for Stovall's blood sample states that Officer Huf was dispatched to the accident at 10:34 p.m. on July 3, 2009. According to Stovall, the time of the police dispatch was not a sufficient indicator of the time he committed the DWI offense. Stovall disputes that, as the trial court suggested, the magistrate could have drawn a reasonable inference from "common knowledge that dispatchers dispatch promptly where an accident occurs." *See Ritz Car Wash, Inc. v. Kastis*, 976 S.W.2d 812, 814 (Tex. App.—Houston [1st Dist.] 1988, pet. denied) (flammable nature of gasoline was "common knowledge" for products liability purposes). Stovall instead characterizes this knowledge as "specialized." *See Cardona v. State*, 134 S.W.3d 854, 860 (Tex. App.—Amarillo 2004, pet. ref'd) (magistrate improperly relied on "specialized knowledge" to infer that anhydrous ammonia was illicitly obtained and improperly stored for purposes of manufacturing methamphetamine because it was found hidden in machine shop). Our sister court observed in *Cardona v. State* that "the rule of law prohibits us from perusing anything other than the four corners of the [affidavit]. Any specialized knowledge lying within the mind of a police officer or jurist and garnered through the years falls outside that realm." *Id*. However, we need not decide whether the magistrate could have properly relied on any knowledge regarding the promptness of dispatches.

9

In this case, it was not necessary for the magistrate to rely on any knowledge that dispatchers dispatch promptly in order to conclude that Stovall committed the alleged offense shortly before 10:34 p.m. According to the affidavit, Officer Huf was dispatched quickly enough to find Stovall, his damaged vehicle, and a witness still at the accident scene. Stovall admitted twice that he had been driving, and the witness, who had observed the accident, also identified Stovall as one of the drivers. Thus, the affidavit on its face sets out sufficient facts whereby the magistrate could have reasonably inferred that Stovall was driving his vehicle just prior to the time of the dispatch.

Second, the affidavit states that Officer Huf observed Stovall exhibiting signs of intoxication such as swaying, slurred speech, and a strong odor of alcohol when police arrived sometime after 10:34 p.m. The affiant, Officer Johnson, then administered field-sobriety tests to Stovall. He performed poorly, "exhibiting six clues on the HGN test," and was promptly taken into police custody where he remained from that point forward. Given these facts submitted in the affidavit, the magistrate had a substantial basis to determine that evidence of intoxication would still be present in Stovall's blood when the search warrant issued less than three hours later at 1:31 a.m.[7] *See Dugas*, 296 S.W.3d at 117 ("[C]onsidering that a maximum of six hours had elapsed since appellee was stopped . . . we cannot say it was unreasonable for the magistrate to presume that there still would be some evidence of intoxication found in appellee's blood when the warrant was signed.").

---

[7] The magistrate could also have inferred that Stovall had driven while intoxicated from his refusal to submit to a breath test. *See generally* Tex. Transp. Code Ann. § 724.061 (West 2011) (refusal to give breath specimen is admissible at trial); *Bartlett v. State*, 270 S.W.3d 147, 153 (Tex. Crim. App. 2008) (evidence of refusal to submit to breath test is relevant because it tends to show that defendant had consciousness of guilt).

We hold that, interpreting the affidavit in a common-sense manner, the magistrate had a substantial basis to conclude that Stovall committed the DWI offense just shortly before the police were dispatched and that the blood sample sought in the warrant would uncover evidence of that offense. The affidavit was adequate to give the magistrate a substantial basis for concluding that probable cause existed. The trial court did not abuse its discretion in denying the motion to suppress, and Stovall's sole point of error is overruled.

*Harm Analysis*

Although we hold that the trial court did not err in denying Stovall's motion, we note that even if error had occurred, we would nonetheless find it harmless. Stovall urges that because the seizure of his blood violated the Fourth Amendment, this Court must apply a constitutional harm analysis and thus reverse his conviction unless we determine beyond a reasonable doubt that the error did not contribute to the verdict. Tex. R. App. P. 44.2(a); *Hernandez v. State*, 60 S.W.3d 106, 108 (Tex. Crim. App. 2001). The State counters that if the trial court did err, at most it violated state statutory law, warranting a non-constitutional harm analysis under which we would find harmless error. *See* Tex. R. App. P. 44.2(b). We agree that any error in Stovall's case would have been purely statutory and, given the facts presented at trial, harmless.

The taking of a blood sample is a search and seizure under both the federal and Texas constitutions. *Aliff v. State*, 627 S.W.2d 166, 169 (Tex. Crim. App. 1982). However, under certain circumstances, a blood sample taken without a warrant is not an unreasonable search and seizure, and therefore comports with constitutional requirements. *Schmerber v. California*, 384 U.S. 757, 770–71 (1966). Police officers may constitutionally obtain a blood sample without a warrant or

11

consent if they have probable cause, exigent circumstances, and a reasonable method of extraction. *Id.* The fact that alcohol dissipates quickly in the blood has been held to constitute exigent circumstances. *State v. Laird*, 38 S.W.3d 707, 713 (Tex. App.—Austin 2000, pet. ref'd). Thus, the reasonable taking of a blood sample for evidence of a DWI offense, where probable cause exists, meets constitutional requirements despite the absence of a valid warrant or consent. *Id*.

In Texas, however, there are additional statutory requirements that must also be met when a person is arrested for an intoxication-related offense. *See* Tex. Transp. Code Ann. §§ 724.011, .013, .015 (West 2011); *Laird*, 38 S.W.3d at 713–14. Texas's implied consent statute governs the State's ability to obtain a breath or blood sample from a person arrested for an intoxication-related offense and provides that an arrested suspect has impliedly consented to the taking of a sample in certain circumstances. *See generally* Tex. Transp. Code Ann. §§ 724.001, *et seq.*; *State v. Johnston*, 336 S.W.3d 649, 661 (Tex Crim. App. 2011). At the same time, the statute limits the ability of police officers to obtain a sample when the arrested suspect expressly refuses, as Stovall arguably did here. *See* Tex. Transp. Code Ann. § 724.013.

When a valid search warrant is obtained for a blood or breath sample, the requirements of chapter 724 do not apply because there is no need to obtain the arrested suspect's consent. *Beeman v. State*, 86 S.W.3d 613, 616 (Tex. Crim. App. 2002) ("[I]f the State has a valid search warrant, it has no need to obtain the suspect's consent [under chapter 724]."). However, in the absence of a valid search warrant, full compliance with chapter 724 is required, even though the sample is taken from the arrested suspect under exigent circumstances. *See Laird*, 28 S.W.3d at 713 ("Texas courts require full compliance with the provisions of Chapter 724 when a blood sample is

12

taken from an arrested suspect even though exigent circumstances exist."). As a result, the State is correct that if the warrant had not been supported by probable cause in this case, the only potential error by the trial court would fall under chapter 724.[8] As a non-constitutional error, this would justify reversal of Stovall's conviction only if the record provided us with less than "fair assurance that the error did not influence the jury, or had but a slight effect." *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998).

At trial, the results of Stovall's blood test were compounded by evidence including his two admissions that he was driving; his admission that he had been drinking; the testimony that alcohol was found in his vehicle; the testimony that he smelled of alcohol, slurred his speech, and swayed while standing at the accident scene; the results of the field-sobriety tests; and the unflattering patrol-car video on which he failed even to recite the alphabet. In light of this overwhelming evidence, the blood-concentration evidence was essentially cumulative. We would have more than "fair assurance that the error . . . had but a slight effect" and would hold the error harmless, affirming Stovall's conviction even in the absence of a valid warrant.

## CONCLUSION

We affirm the judgment of conviction.

---

[8] In Stovall's case, his many visible symptoms of intoxication and admission to driving clearly provided the officer with probable cause to suspect him of DWI; the dissipation of alcohol from his blood presented exigent circumstances; and the phlebotomist at police headquarters supplied a reasonable means of extraction. *See State v. Johnson*, 336 S.W.3d 649, 662–63 (Tex. Crim. App. 2011) (noting that a police phlebotomist drawing blood in a hygenic room inside a jail is considered a reasonable method of extraction). Thus, the constitutional requirements for a warrantless blood sample were met, and the results would have been admissible under the Fourth Amendment.

13

_____

Diane M. Henson, Justice

Before Chief Justice Jones, Justices Pemberton and Henson

Affirmed

Filed:   November 23, 2011

Publish