**AFFIRM; and Opinion Filed March 26, 2014.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-13-00496-CR

### AQUILINO ABONZA MEDINA, Appellant
### V.
### THE STATE OF TEXAS, Appellee

**On Appeal from the County Criminal Court No. 2**
**Dallas County, Texas**
**Trial Court Cause No. MB10-31605**

## MEMORANDUM OPINION
Before Justices FitzGerald, Fillmore, and Evans
Opinion by Justice Fillmore

A jury found appellant Aquilino Abonza Medina guilty of misdemeanor driving while intoxicated (DWI). The trial court assessed punishment of 180 days' confinement and a fine of $1,200. The trial court suspended Medina's confinement and placed him on community supervision for a period of twenty-four months. In a single issue, Medina asserts the trial court erred by admitting testimony of a toxicologist concerning Medina's blood alcohol concentration. Medina argues the emergency room technician who drew Medina's blood was not qualified to do so under section 724.017 of the transportation code, and, therefore, the proper evidentiary foundation for testimony concerning Medina's blood alcohol concentration was not laid. We affirm the trial court's judgment.

## Background

On the night of November 11, 2010, Ashley Carol Heidebrink observed a Hummer hitting a curb, going fast, and travelling on the wrong side of the road. Heidebrink thought the driver of the Hummer was either drunk or having a medical emergency. Heidebrink did not see anyone other than a male driver in the Hummer. Heidebrink called 9-1-1 and followed the Hummer. The Hummer stopped at a gas station, and the driver exited the vehicle. Although Medina's girlfriend, Blanca Estella Cazares, testified that she was the driver of the Hummer that night, Heidebrink identified Medina at trial as the driver of the Hummer. Heidebrink testified that after Medina urinated on a gas pump, he went into the convenience store at the gas station. Heidebrink observed that Medina appeared to have trouble walking. While Medina was in the convenience store, Heidebrink walked to the Hummer and did not see anyone in the vehicle. As Medina was exiting the convenience store, police officers arrived at the scene.

Grand Prairie police officer Nathan McDonald testified at trial. McDonald was dispatched to the gas station with regard to a report that an individual had been driving erratically at a high rate of speed and on the wrong side of the road. Upon making contact with Medina, McDonald observed Medina's eyes were glassy and bloodshot, his speech was slurred, his breath smelled of alcoholic beverage, the zipper of his pants was down, and he had urinated on himself. Based on the number of clues exhibited by Medina during McDonald's attempt to administer the horizontal gaze nystagmus sobriety test, McDonald formed an opinion that Medina was intoxicated. Medina refused to perform further field sobriety tests. McDonald placed Medina under arrest and transported him to jail. McDonald obtained a search warrant for a specimen of Medina's blood.

Grand Prairie police officer Crystal Ziegler transported Medina to Baylor Medical Center at Irving, Texas, (Baylor) to have the search warrant for Medina's blood executed. Ziegler

testified she observed the drawing of Medina's blood by Danny Galvez. Ziegler testified she received the blood drawn by Galvez and transported Medina back to jail.

Galvez, an emergency room medical technician at Baylor, testified that at the time of trial, he was attending school to become a nurse. Galvez testified that he is a qualified medical technician based on his education, on-the-job training, and certification as a paramedic. Before working at Baylor, Galvez was a medic in the United States Marine Corps for four years. His qualification to become a Marine medic included education and training in drawing blood and starting and administering intravenous patient lines. As a Marine medic, he drew blood more than one thousand times. When he completed his paramedic training, he received a paramedic certification. Galvez testified that in order to work in the emergency room, one has to be a paramedic or emergency medical technician, or have experience as a medic in the military. As a medical technician at Baylor, Galvez is responsible for starting intravenous lines, administering intravenous medications, drawing blood, and administering shots. Galvez testified that drawing blood and working with intravenous lines was a major aspect of his job at Baylor, and to satisfy Baylor's competency "packet" for drawing blood, he was required to have performed a minimum of one hundred blood draws.

In the early hours of November 12, 2010, Galvez drew blood from Medina. Galvez testified concerning the steps he took in drawing the blood and that he followed the applicable procedures implemented by Baylor and the police department when drawing Medina's blood. Medina also testified concerning the procedures utilized in labeling the tubes containing the blood drawn from Medina and that he provided the blood drawn from Medina to Ziegler.

Aria McCall, a forensic toxicologist with the Southwestern Institute of Forensic Sciences, testified regarding analysis of the blood alcohol content of Medina's blood specimen drawn at Baylor. McCall testified Medina's blood alcohol content was 0.16 grams of ethanol per 100

–3–

milliliters of blood, in excess of the legal limit of .08. Medina objected to admission of McCall's testimony as to Medina's blood alcohol concentration, because emergency room technician Galvez was not qualified to draw Medina's blood under section 724.017 of the transportation code, and, therefore, the proper evidentiary foundation for McCall's testimony had not been laid. Medina acknowledged Galvez had "lots of experience" and "tremendous training," but objected to Galvez's qualifications under the transportation code because Galvez was not a licensed phlebotomist or licensed technician. The trial court overruled Medina's objection, finding Galvez was "a qualified technician in the eyes of this Court."

A jury found Medina guilty of misdemeanor DWI. Medina filed this appeal.

**Analysis**

On appeal, Medina does not challenge whether the police had justification for his detention, arrest, or search warrant. In his sole issue, Medina contends the State failed to lay the proper predicate for the admission of the blood test results because the person who drew Medina's blood pursuant to the search warrant was not qualified to do so under section 724.017 of the transportation code. At the time Medina's blood was drawn, section 724.017 provided:

> (a)      Only a physician, qualified technician, chemist, registered professional nurse, or licensed vocational nurse may take a blood specimen at the request or order of a peace officer under this chapter. The blood specimen must be taken in a sanitary place.
>
> * * *
>
> (c)      In this section, "qualified technician" does not include emergency medical services personnel.

Act of April 21, 1995, 74th Leg., R.S., ch. 165, § 1 Tex. Gen. Laws 1025, 1822 (amended 2013) (current version at TEX. TRANSP. CODE ANN. § 724.017 (West Supp. 2013)).[1]  According to

---

[1] Effective September 1, 2013, section 724.017 was amended in pertinent part as follows:

(a)      Only the following may take a blood specimen at the request or order of a peace officer under this chapter:
    (1)      a physician;
    (2)      a qualified technician;
    (3)      a registered professional nurse;

–4–

Medina, the trial court erred by admitting McCall's testimony concerning Medina's blood alcohol concentration because Medina's blood sample was not taken by a qualified technician as required by section 724.017.

A trial court's ruling on the admissibility of evidence is reviewed for an abuse of discretion. *Casey v. State*, 215 S.W.3d 870, 879 (Tex. Crim. App. 2007). An abuse of discretion occurs when the trial court's decision lies outside the zone of reasonable disagreement. *Id.*

Texas's implied consent statute governs the State's ability to obtain a breath or blood sample from a person arrested for an intoxication-related offense and provides that an arrested suspect has impliedly consented to the taking of a sample in certain circumstances. *See generally* TEX. TRANSP. CODE ANN. §§ 724.001–724.064 (West 2011 & Supp. 2013); *see also State v. Johnston*, 336 S.W.3d 649, 660 (Tex. Crim. App. 2011) (chapter 724 of transportation code contains Texas's implied consent statutes and governs State's ability to obtain breath or blood sample from DWI suspect when there is no warrant). The statute limits the ability of police officers to obtain a blood sample when the arrested suspect expressly refuses, as Medina

---

(4)     a licensed vocational nurse; or

(5)     a licensed or certified emergency medical technician-intermediate or emergency medical technician-paramedic authorized to take a blood specimen under Subsection (c).

(a-1)     The blood specimen must be taken in a sanitary place.

* * *

(c)     A licensed or certified emergency medical technician-intermediate or emergency medical technician-paramedic may take a blood specimen only if authorized by the medical director for the entity that employs the technician-intermediate or technician-paramedic. The specimen must be taken according to a protocol developed by the medical director that provides direction to the technician-intermediate or technician-paramedic for the taking of a blood specimen at the request or order of a peace officer. In this subsection, "medical director" means a licensed physician who supervises the provision of emergency medical services by a public or private entity that:

(1)     provides those services; and

(2)     employs one or more licensed or certified emergency medical technician-intermediates or emergency medical technician-paramedics.

* * *

(c-2)     If a licensed or certified emergency medical technician-intermediate or emergency medical technician-paramedic takes a blood specimen at the request or order of a peace officer, a peace officer must:

(1)     observe the taking of the specimen; and

(2)     immediately take possession of the specimen for purposes of establishing a chain of custody.

*See* Act of May 15, 2013, 83rd Leg., R.S., ch. 247, §§ 1, 2, 2 Tex. Gen. Laws 991, 991–92 (amended 2013) (current version at TEX. TRANSP. CODE ANN. § 724.017 (West Supp. 2013)). The blood draw at issue occurred prior to the September 1, 2013 effective date of the amendments; accordingly, we use and refer to the statute in force at the time of the blood draw at issue. *See Perry v. State*, 902 S.W.2d 162, 163 (Tex. App.-- Houston [1st Dist.] 1995, pet. ref'd) (trial court correctly applied statute in effect at time offense was committed).

did here. *See* TEX. TRANSP. CODE ANN. §§ 724.012(b), 724.013 (West 2011).[2] However, where, as here, a valid search warrant is obtained for a blood sample, the requirements of chapter 724 do not apply. *See Beeman v. State*, 86 S.W.3d 613, 615, 616 (Tex. Crim. App. 2002) ("[I]f the state has a valid search warrant, it has no need to obtain the suspect's consent" and "consent, implied or explicit, becomes moot"); *Stovall v. State*, No. 03-10-00552-CR, 2011 WL 5865235, at \*6 (Tex. App.-–Austin Nov. 23, 2011, no pet.) ("When a valid search warrant is obtained for a blood or breath sample, the requirements of chapter 724 do not apply because there is no need to obtain the arrested suspect's consent.") (citing *Beeman*, 86 S.W.3d at 616).[3] Accordingly, Medina's single issue on appeal, which hinges on the applicability of section 724.017 of the transportation code, is without merit.

Even if we analyzed Medina's blood draw under the Fourth Amendment "reasonableness" standard, the trial court did not abuse its discretion in admitting McCall's testimony concerning Medina's blood alcohol concentration. *See* U.S. CONST. amend. IV. First, the Supreme Court has determined that, for the general population, a blood test is a reasonable means for analyzing an individual's alcohol level. *Schmerber v. California*, 384 U.S. 757, 771 (1966); *see also Johnston*, 336 S.W.3d at 659. In the absence of any record evidence that a venipuncture blood draw would not be reasonable in Medina's case due to a verifiable medical condition, we presume that the choice to administer the test is reasonable. *See Johnston*, 336 S.W.3d at 660. Second, compliance with section 724.017 of the transportation code is one non-

---

[2] *See also State v. Baker*, No. 12-12-00092-CR, 2013 WL 5657649, at \*4 (Tex. App.—Tyler Oct. 16, 2013, pet. granted) (mem. op., not designated for publication) ("[I]n the absence of a valid search warrant or actual consent, full compliance with Chapter 724 [of the transportation code] is required. . . .").

[3] *See also Tex. Dep't of Pub. Safety v. Lee*, No. 03-11-00532, 2012 WL 3793261, at \*2 n.5 (Tex. App.-–Austin Aug. 31, 2012, no pet.) (mem. op., not designated for publication) ("The implied consent statute does not affect an officer's right to obtain a search warrant for the blood draw.") (citing *Beeman*, 86 S.W.3d at 615–16); *Martin v. State*, No. 10-10-00426-CR, 2012 WL 3242666, at \*2 n.1 (Tex. App.-–Waco Aug. 9, 2012, pet. ref'd) (mem. op., not designated for publication) (citing *Beeman*, 86 S.W.3d at 616, for "holding that Chapter 724 is inapplicable when there is a warrant to draw blood and that compliance with Chapter 724 is not necessary to satisfy the Fourth Amendment"); *Dye v. State*, No. 08-02-00018-CR, 2003 WL 361289, at \*1 (Tex. App.—El Paso Feb. 20, 2003, no pet.) (mem. op., not designated for publication) ("In *Beeman,* the court held that [transportation code] sections 724.012 [regarding taking of a specimen] and 724.013 [regarding taking of a specimen if a person refuses], do not prohibit conducting a blood test pursuant to a search warrant. When a valid search warrant has been obtained, sections 724.012 and 724.013 become moot.") (citing *Beeman*, 86 S.W.3d at 614–15, 616).

exclusive means for establishing the reasonableness of the "manner of performance" of the blood draw. *Id*. at 661. The evidence at trial established Galvez was an emergency room medical technician who was attending school to become a nurse. Galvez testified regarding his education and experience, certification as a paramedic, and training in drawing blood and starting intravenous patient lines. He testified that, in his four years as a Marine medic, he drew blood more than one thousand times. Galvez further testified that, as a medical technician at Baylor, drawing blood was a major aspect of his job and to satisfy the hospital's competency "packet," he had to perform a minimum of one hundred blood draws. Galvez's testimony established he was familiar with procedures for drawing a blood sample and had drawn blood on many occasions. Indeed, Medina's counsel acknowledged to the trial court that Galvez had "lots of experience" and "tremendous training." On this record, Galvez was a "qualified technician" entitled to draw Medina's blood under the standards of section 724.017. *See Krause v. State*, 405 S.W.3d 82, 83–86 (Tex. Crim. App. 2013) (hospital employee who was trained to draw blood, whose primary duty at the hospital for six years was to draw blood, who took between fifty to one hundred blood draws per day, and knew how to use the kit and equipment provided by the police officers to take blood specimens was qualified within the meaning of section 724.017); *State v. Bingham*, 921 S.W.2d 494, 496 (Tex. App.—Waco 1996, pet. ref'd) ("The common-sense interpretation of the term 'qualified technician,' . . . must include a phlebotomist who a hospital or other medical facility has determined to be qualified in the technical job of venesection or phlebotomy, i.e., the drawing of blood.").[4] Further, Medina's blood draw

---

[4] *See also Meier v. State*, No. 05-08-00486, 2009 WL 765490, at *2 (Tex. App.—Dallas Mar. 25, 2009, no pet.) (not designated for publication) (determination of whether someone is a "qualified technician" under section 724.017 depends on that individual's education, training, and experience; evidence of phlebotomist's extensive education, training, and experience established she was a qualified technician under section 724.017, and trial court did not abuse its discretion when it overruled appellant's objection to admission into evidence of blood alcohol test results); *Edwards v. State*, No. 11-11-00135-CR, 2013 WL 6178582, at *3 (Tex. App.—Eastland Nov. 21, 2013, no pet.) (mem. op., not designated for publication) (trial court did not abuse its discretion in determining medical technologist who drew appellant's blood was a "qualified technician" under transportation code section 724.017 where technician had earned Bachelor of Science degree in medical technology, was trained to draw blood, and worked for hospital for seventeen years where his duties included drawing and testing blood); *Goin v. State*, No. 02-11-00031-CR, 2011 WL 6260875, at *6 (Tex. App.—Fort Worth Dec. 15, 2011, pet. ref'd) (mem. op., not designated for publication) (trial

occurred at Baylor Medical Center at Irving, Texas. Medina does not argue on appeal that the medical environment in which his blood was taken was unsafe or that the manner of performance of the blood draw was inconsistent with accepted medical practices or presented an "unjustified element of personal risk of infection or pain." *Johnston*, 336 S.W.3d at 663. Accordingly, under the totality of the circumstances in this record, the manner of performance of Medina's blood draw was reasonable.

We conclude the trial court did not abuse its discretion in admitting McCall's testimony concerning Medina's blood alcohol concentration. We resolve Medina's sole issue against him. Having resolved Medina's sole issue against him, we affirm the trial court's judgment.

/Robert M. Fillmore/

ROBERT M. FILLMORE
JUSTICE

Do Not Publish
TEX. R. APP. P. 47

130496F.U05

---

court did not abuse its discretion by determining that phlebotomist was qualified under section 724.017 of the transportation code and by admitting the blood specimen drawn after his arrest); *Finley v. State*, No. 06-10-00218-CR, 2011 WL 6395158, at *6–7 (Tex. App.—Texarkana Dec. 20, 2011, pet. ref'd) (mem. op., not designated for publication) ("We note that Section 724.017 of the Texas Transportation Code, in including 'qualified technician' among those authorized to draw blood, makes no requirement that the technician be licensed or certified, only that they are qualified to perform the task.").



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

AQUILINO ABONZA MEDINA, Appellant

No. 05-13-00496-CR          V.

THE STATE OF TEXAS, Appellee

On Appeal from the County Criminal Court No. 2, Dallas County, Texas,
Trial Court Cause No. MB10-31605.
Opinion delivered by Justice Fillmore,
Justices FitzGerald and Evans participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 26th day of March, 2014.

/Robert M. Fillmore/

ROBERT M. FILLMORE
JUSTICE