

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-16-00218-CR

Javier Caesar **GUTIERREZ**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the County Court at Law No. 8, Travis County, Texas[1]
Trial Court No. C-1-CR-14-219821
Honorable Carlos Humberto Barrera, Judge Presiding

Opinion by:    Rebeca C. Martinez, Justice

Sitting:       Sandee Bryan Marion, Chief Justice
               Rebeca C. Martinez, Justice
               Luz Elena D. Chapa, Justice

Delivered and Filed:  February 1, 2017

AFFIRMED

Javier Caesar Gutierrez was convicted by a jury of driving while intoxicated and placed on fifteen months community supervision. The sole issue presented on appeal is whether the trial court abused its discretion in admitting evidence relating to Gutierrez's use of Benadryl. We affirm the trial court's judgment.

---

[1] The Texas Supreme Court transferred this appeal to this court for docket equalization purposes. *See* TEX. GOV'T CODE § 73.001.

## BACKGROUND

Around 2:38 a.m., Officer Vanessa Jimenez was dispatched to a one-car accident on the exit ramp to a highway. The car crashed head on into the wall of the exit ramp, and both air bags deployed. Gutierrez was driving the car.

At trial, Officer Jimenez testified she first encountered Gutierrez while he was being treated in an EMS van. Officer Jimenez described Gutierrez's eyes as being bloodshot, red, and watery. She stated a strong smell of alcohol was coming from his breath which "was just pretty much taking over the whole van." After EMS cleared Gutierrez, Officer Jimenez drove him to a nearby gas station because it was raining and she wanted to conduct the field sobriety tests under the cover of the gas station's awning.

Gutierrez told Officer Jimenez he was returning home to San Antonio after drinking in downtown Austin. He stated he had consumed two eight-ounce drinks in approximately one-half hour. Although Gutierrez was a bartender, he stated he was not certain what type of alcohol the drinks contained because he ordered them off a menu. Gutierrez also informed Officer Jimenez he had taken a "couple of doses" of Benadryl a "couple of hours ago." Officer Jimenez was handed a box of Benadryl which the trial court admitted for demonstrative purposes. The trial court instructed the jury not to be confused that the box contained the specific medication, if any, consumed by Gutierrez. Officer Jimenez read the following warning from the box:

> Drowsiness may occur, avoid alcoholic drinks, be careful while driving a motor vehicle or operating machinery; alcohol, sedatives, and tranquilizers may increase drowsiness.

Officer Jimenez attempted to conduct the HGN test; however, Gutierrez failed to follow her instructions. After numerous attempts, Officer Jimenez determined Gutierrez was refusing the test based on his actions, and she placed him under arrest for driving while intoxicated. Gutierrez refused to consent to a breath test.

A videotape of the conversation between Officer Jimenez and Gutierrez at the gas station and her subsequent efforts to conduct the HGN test also was introduced into evidence and played for the jury. Based on the evidence presented including the videotape and Officer Jimenez's testimony, the jury found Gutierrez guilty of driving while intoxicated. Gutierrez appeals.

## DISCUSSION

Gutierrez's sole issue on appeal is whether the trial court erred in admitting evidence of his use of Benadryl. We review a trial court's ruling on the admissibility of evidence under an abuse of discretion standard and uphold a trial court's decision to admit evidence as long as the ruling is not outside the zone of reasonable disagreement. *Henley v. State*, 493 S.W.3d 77, 82-83 (Tex. Crim. App. 2016).

In his brief, Gutierrez phrases his issue as follows:

> Whether the Trial Court erred and abused its discretion by allowing the State to present evidence regarding Benadryl without the State laying the proper foundation for its entry. Specifically, whether the State is required to produce expert testimony to establish the reliability and relevancy of Benadryl when proving intoxication for a DWI offense.

Gutierrez first argues the State was required to produce an expert "within the particular field of toxicology or drug recognition" in order to introduce evidence of Benadryl intoxication, and Officer Jimenez was not qualified as such an expert. Gutierrez next argues the State failed to prove the evidence regarding the Benadryl was reliable and relevant.[2]

In support of his argument, Gutierrez primarily relies on the Texas Court of Criminal Appeals decision in *Layton v. State*, 280 S.W.3d 235 (Tex. Crim. App. 2000). In *Layton*, Daniel

---

[2] In making this argument, Gutierrez alludes to the reliability of the HGN test conducted by Officer Jimenez. Because Gutierrez combines more than one contention in a single issue, his issue is multifarious, and we could refuse to address the reliability of the HGN test for that reason. *Prihoda v. State*, 352 S.W.3d 796, 801 (Tex. App.—San Antonio 2011, pet. ref'd). Even if we elected to consider the reliability of the HGN test, Gutierrez did not object to Officer Jimenez's testimony regarding the test; therefore, he has not preserved this complaint for our review. TEX. R. APP. P. 33.1.

Layton was convicted of driving while intoxicated by the introduction of alcohol into the body. 280 S.W.3d at 237. On appeal, he argued the trial court erred in admitting evidence of his use of Xanax and Valium "without requiring the State to show it was reliable and competent scientific evidence." *Id*. The evidence was in the form of statements Layton made to the arresting officer recorded on video. *Id*. In response to the officer's question regarding whether he took any medications, Layton responded he took Xanax and Valium prescribed by his doctor, but qualified that he had taken the Valium at 2 p.m. the previous afternoon and had not taken Xanax since the day before. *Id*. The officer inquired whether Layton read the inserts included with those medications and commented "it was probably not a good idea to be drinking 'on top of those.'" *Id*. At trial, Layton objected to the admissibility of his use of Xanax and Valium, arguing the evidence was inadmissible "without the State proving the accuracy and reliability of the evidence and its relevance to whether [he] was intoxicated by the introduction of alcohol." *Id*. at 240. Layton further argued the State had not shown the relevance of the evidence "without extrapolation on the Xanax and Valium to determine their effect on the body." *Id*.

As previously noted, Layton was charged with intoxication by introduction of alcohol into the body, and the jury was charged with a definition of intoxication limited to the introduction of alcohol into the body. *Id*. at 241. As a result, the Texas Court of Criminal Appeals concluded:

> . . ., to be relevant in this specific case, the evidence needed to influence the jury's determination of whether Appellant was intoxicated by alcohol, not another substance combined with alcohol. Without a showing that Xanax and Valium, taken more than 24 hours and 14 hours prior, respectively, would have had a synergistic effect on Appellant's degree of intoxication by alcohol, the evidence is not relevant.

*Id*. The court then held "the trial court erred in allowing [Layton's] use of Xanax and Valium to be introduced to the jury without the State first showing that the evidence was relevant to [Layton's] intoxication," reasoning:

The essential element disputed by Appellant is that the evidence of his use of medications should not have been admitted without the State establishing that it was relevant to his intoxication. There is no evidence as to the dosage taken by Appellant, the exact times of ingestion, or the half-life of the drug in the human body. Considering the length of time between the ingestion of the medication and the time of arrest, a lay juror is not in a position to determine whether Xanax and Valium, taken more than 12 hours before arrest, would have any effect on Appellant's intoxication. There was no testimony indicating that Officer Allen had any medical knowledge regarding the uses of Xanax and Valium, or about the effect of combining the medications with alcohol.

*Id*. at 241-42.

The decision in *Layton* is readily distinguishable from the instant case. First, the jury in the instant case was charged that intoxicated means "not having the normal use of mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, a combination of two or more of those substances, or any other substance into the body." Therefore, the State was not required to prove Benadryl "would have had a synergistic effect on [Gutierrez's] degree of intoxication by alcohol." *Id*. at 241. Instead, the State was only required to show Gutierrez introduced both alcohol and Benadryl into his body and was intoxicated as a result. Second, Gutierrez testified about the dosage he had taken, *i.e.*, a couple of doses, and the time of the ingestion, *i.e.*, a couple of hours ago. Finally, assuming Benadryl's causing drowsiness was not within the common knowledge of lay jurors, Officer Jimenez confirmed its effect by reading the label from the box. We disagree that Officer Jimenez required any special, expert qualifications to read the label or that the State was otherwise required to prove the reliability of the scientific theory used in determining the side effects listed on the label of the box. Therefore, unlike the facts in *Layton*, '[c]onsidering the length of time between the ingestion of the medication and the time of arrest, a lay juror [was] in a position to determine whether [Benadryl

taken a couple of hours] before arrest, would have any effect on [Gutierrez's] intoxication."[3] *Id.* at 242.

Even if we are incorrect in holding the trial court erred in admitting the evidence regarding Gutierrez's Benadryl use, the error must be disregarded unless it affected Gutierrez's substantial rights.[4] TEX. R. APP. P. 44.2(b). "A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict." *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). A criminal conviction will not be overturned for non-constitutional error "if the appellate court, *after examining the record as a whole*, has fair assurance that the error did not influence the jury, or influenced the jury only slightly." *Schutz v. State*, 63 S.W.3d 442, 444 (Tex. Crim. App. 2001) (emphasis in original). We "consider everything in the record, including testimony and physical evidence, the nature of the evidence supporting the verdict, and the character of the error and its relationship to other evidence." *Id*. We "might also consider the jury instruction given by the trial judge, the State's theory and any defensive theories, closing

---

[3] The fact that Benadryl is an over-the-counter medication with a label warning alcohol increases the risk of drowsiness also makes this case distinguishable from the other cases cited by Gutierrez which involved the use of marijuana, *see DeLarue v. State*, 102 S.W.3d 388, 400-02 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd), and the use of the prescription medications Lisinopril and Pyridoxine, *see Delane v. State*, 369 S.W.3d 412, 415, 419-22 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd).

[4] In his brief, Gutierrez refers to the standard of review for constitutional error, asserting Gutierrez was under arrest when he made the statements regarding his Benadryl use. Gutierrez argues the introduction of the statements violated his constitutional rights because Officer Jimenez did not read him his *Miranda* rights. First, Gutierrez did not raise this objection when Officer Jimenez testified about Gutierrez's statements but only when the prosecutor began to play the videotape for the jury. Therefore, Gutierrez did not preserve this complaint with regard to the admissibility of Gutierrez's statements. *See* TEX. R. APP. P. 33.1; *see also Lane v. State*, 151 S.W.3d 188, 193 (Tex. Crim. App. 2004) (noting error in admission of evidence is cured when same evidence comes in elsewhere without the objection) (quoting *Valle v. State*, 109 S.W.3d 500, 509 (Tex. Crim. App. 2003)); *Leday v. State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998) ("Our rule ... is that overruling an objection to evidence will not result in reversal when other such evidence was received without objection, either before or after the complained-of ruling."). In addition, we disagree that Gutierrez was under arrest when Officer Jimenez drove him to the gas station and administered the field sobriety tests. *See State v. Stevenson*, 958 S.W.2d 824, 828-29 (Tex. Crim. App. 1997) (determining individual was not in custody during roadside investigation for driving while intoxicated); *Castro v. State*, 373 S.W.3d 159, 166 (Tex. App.—San Antonio 2012, no pet.) ("Moving a suspect a short distance to further an investigation is consistent with an investigatory detention's purpose.").

arguments and even voir dire, if material to appellant's claim." *Morales v. State*, 32 S.W.3d 862, 867 (Tex. Crim. App. 2000).

Gutierrez admitted he was drinking alcohol an hour before the accident. Although he stated he only had two drinks, the jury could have disbelieved that portion of his testimony based on Officer Jimenez's description of his appearance and the strong odor of alcohol on his breath. The jury could also have believed Gutierrez was being evasive about the amount of alcohol he consumed from his testimony that he did not know what alcohol the drinks contained even though he was a bartender. The jury also was able to view the videotape and observe Gutierrez's actions and demeanor in responding to Officer Jimenez's questions and her instructions while she was attempting to administer the HGN test. The jury could have determined Gutierrez was being deliberately uncooperative to prevent Officer Jimenez from finding the necessary clues. *See Kirsch v. State*, 306 S.W.3d 738, 745 (Tex. Crim. App. 2010) (noting inability to perform field sobriety tests or follow directions supports inference of intoxication); *Jackson v. State*, 468 S.W.3d 189, 193 (Tex. App.—Houston [14th Dist.] 2015, no pet.) (noting appellant's refusal to perform field sobriety tests as factor jury could consider in finding appellant intoxicated). Finally, the jury could infer Gutierrez was intoxicated based on his refusal to perform the breath test. *See Bartlett v. State*, 270 S.W.3d 147, 153 (Tex. Crim. App. 2008) (holding evidence of refusal to submit to breath test tends to show consciousness of guilt); *Stovall v. State*, 440 S.W.3d 661, 668 n.7 (Tex. App.—Austin 2011, no pet.) (noting refusal to submit to breath test supports inference that appellant was driving while intoxicated). The State's theory was that Gutierrez was intoxicated, and most of the prosecutor's arguments were focused on Gutierrez's refusal to undergo the tests that would prove his intoxication. After examining the record as a whole, we hold the evidence strongly supports a finding of intoxication without considering the Benadryl evidence, and we are assured that if the admission of the Benadryl evidence influenced the jury at all, it did so only

slightly.  *See Schutz*, 63 S.W.3d at 444; *see also DeLarue v. State*, 102 S.W.3d at 402 (holding erroneous admission of evidence regarding marijuana use was harmless where testimony at trial established appellant was highly intoxicated from alcohol).  Therefore, if the trial court erred in admitting the Benadryl evidence, we hold its admission was harmless.

### CONCLUSION

The trial court's judgment is affirmed.

Rebeca C. Martinez, Justice

DO NOT PUBLISH