ACCEPTED
03-14-00483-CR
6244366
THIRD COURT OF APPEALS
AUSTIN, TEXAS
7/27/2015 8:07:24 PM
JEFFREY D. KYLE
CLERK

**CAUSE NO. 03-14-00483-CR**

_____

**IN THE COURT OF APPEALS FOR THE THIRD DISTRICT OF TEXAS AUSTIN**

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
7/27/2015 8:07:24 PM
JEFFREY D. KYLE
Clerk

_____

**TERRY LYNN STEVENS,
Appellant**

**V.**

**THE STATE OF TEXAS,
Appellee**

_____

**ON APPEAL FROM CAUSE NO. 41839
424th JUDICIAL DISTRICT COURT OF BURNET COUNTY, TEXAS**

_____

**BRIEF FOR APPELLEE**

_____

**OFFICE OF THE DISTRICT ATTORNEY
33RD AND 424TH JUDICIAL DISTRICTS
Wiley B. McAfee, District Attorney
P.O. Box 725
Llano, TX 78643
Telephone: 325-247-5755
Facsimile: 325-247-5274**

**By:  R. Blake Ewing
Assistant District Attorney
State Bar No. 24076376
asstda2@burnetcountytexas.org**

**Gary W. Bunyard
Assistant District Attorney
State Bar No. 03353500
g.bunyard@co.llano.tx.us
ATTORNEYS FOR APPELLEE**

**July 27, 2015**

***ORAL ARGUMENT REQUESTED***

# IDENTITY OF THE PARTIES AND COUNSEL

**Trial Court**

Honorable Dan H. Mills (Retired)
424th Judicial District
Burnet County Courthouse Annex (North)
1701 E. Polk St., Suite 74
Burnet, TX 78611


**Attorney for State/Appellee**

R. Blake Ewing (Trial and Appellate Counsel)
Assistant District Attorney
1701 E. Polk, Suite 24
Burnet, TX 78611
512-756-5449
State Bar No. 24076376

Gary W. Bunyard (Appellate Counsel)
Assistant District Attorney
P.O. Box 725
Llano, TX 78643
325-247-5755
State Bar No. 03353500

Richard Crowther (Trial Counsel)
Assistant District Attorney
1701 E. Polk, Suite 24
Burnet, TX 78611
512-756-5449
State Bar No. 05174200

**Attorney for Appellant**

Tracy D. Cluck (Appellate Counsel)
1450 West Highway 290, #855
Dripping Springs, TX 78620
512-264-9997
State Bar No. 00787254

Michelle Moore (Trial Counsel)
1008 N. Water
Burnet, TX 78611
512-234-3074
State Bar No. 14362150

Michael Watson (Trial Counsel)
1008 N. Water
Burnet, TX 78611
512-234-3074
State Bar No. 24060804

**Appellant**

Terry Lynn Stevens
TDCJ# 01942880
SID# 05052947
TDCJ, Alfred Hughes Unit
Rt. 2 Box 4400
Gatesville, TX 76597

# TABLE OF CONTENTS

IDENTITY OF THE PARTIES AND COUNSEL ................................................................ ii

TABLE OF AUTHORITIES ........................................................................................ v

STATEMENT OF THE CASE ...................................................................................... 2

STATEMENT ON ORAL ARGUMENT ........................................................................ 2

REPLY TO ISSUE PRESENTED ................................................................................. 3

EXPLANATION OF CITATION OF RECORDS ............................................................. 3

STATEMENT OF FACTS .......................................................................................... 4

SUMMARY OF THE ARGUMENT – REPLY TO ISSUE NO. 1 ......................................... 8

ARGUMENT ON REPLY TO ISSUE NO. 1 ................................................................. 9

    I.   **The trial court properly denied Appellant's motion to suppress evidence of blood test results based on alleged deficiencies in the warrant affidavit……………… 9**

    II.  **If the trial court did err in admitting the evidence of blood results, any such error was harmless in light of the overwhelming evidence of Appellant's intoxication………………………………………………………………… 17**

SUMMARY OF THE ARGUMENT – REPLY TO ISSUE NO. 2 ....................................... 27

ARGUMENT ON REPLY TO ISSUE NO. 2 ............................................................... 28

SUMMARY OF THE ARGUMENT – REPLY TO ISSUE NO. 3 ....................................... 34

ARGUMENT ON REPLY TO ISSUE NO. 3 ............................................................... 35

PRAYER FOR RELIEF ........................................................................................... 39

CERTIFICATE OF WORD COUNT .......................................................................... 39

CERTIFICATE OF SERVICE ................................................................................... 40

# TABLE OF AUTHORITIES

**Cases**

*Annis v. State*, 578 S.W.2d 406 (Tex. Crim. App. 1979)...................................................18

*Ashford v. State*, 658 S.W.2d 216 (Tex. App. Texarkana 1983)…...……………….……22

*Clayton v. State*, 235 S.W.3d 772 (Tex. Crim. App. 2007)……………………...……28, 29

*Cotton v. State*, 686 S.W.2d 140 (Tex. Crim. App. 1985)………………………………..19

*Crain v. State*, 315 S.W.3d 43 (Tex. Crim. App. 2010)……...…………………….……...9

*Denton v. State*, 911 S.W.2d 388 (Tex. Crim. App. 1995)……...………………….………29

*Flores v. State,* 319 S.W.3d 697 (Tex. Crim. App. 2010)…………………….......…….…11

*Gilbert v. State,* 808 S.W.2d 467 (Tex. Crim. App. 1991)...................................................35

*Harris v. State*, 790 S.W.2d 568 (Tex. Crim. App. 1989)………...…………………...……18

*Hernandez v. State*, 60 S.W.3d 106 (Tex. Crim. App. 2001)...............................................17

*Hitt v. State*, 53 S.W.3d 697 (Tex.App.—Austin 2001)…………………………………36

*Hooper v. State*, 214 S.W.3d 9 (Tex. Crim. App. 2007)………......................................…29

*Hyde v. State*, 846 S.W.2d 503 (Tex. App.—Corpus Christi 1993, pet. ref'd)…………...20

*Illinois v. Gates,* 462 U.S. 213, 76 L. Ed. 2d 527, 103 S. Ct. 2317 (1983)……...…9, 10, 11

*Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)……...…28

*Johnson v. State,* 803 S.W.2d 272 (Tex. Crim. App. 1990)……………………….....…11

*Montgomery v. State*, 810 S.W.2d 372 (Tex. Crim. App. 1991)...………..……………….35

*Mosley v. State*, 983 S.W.2d 249 (Tex. Crim. App. 1998)…………………….……....…17

*Mozon v. State*, 991 S.W.2d 841 (Tex. Crim. App. 1999)………………………………..35

*Poole v. State*, 974 S.W.2d 892 (Tex.App.—Austin 1992)……………………………....36

*Rabbani v. State*, 847 S.W.2d 555 (Tex. Crim. App. 1992),
    cert. denied, 509 U.S. 926, 113 S.Ct. 3047, 125 L.Ed.2d 731 (1993)……..………26

*Rodriguez v. State,* 232 S.W.3d 55 (Tex. Crim. App. 2007)………………………………...10

*State v. Jordan*, 342 S.W.3d 565 (Tex. Crim. App. 2011)…………………….....…………11

*State v. McLain*, 337 S.W.3d 268 (Tex. Crim. App. 2011)………………………….9, 10

*State v. Webre*, 347 S.W.3d 381 (Tex. App.—Austin 2011, no pet.)……………...….9, 10

*Stovall v. State*, 440 S.W.3d 661 (Tex. App.—Austin 2011, no pet.)…………...…..9, 15, 16

*Swearingen v. State*, 143 S.W.3d 808 (Tex. Crim. App. 2004)……………….…9, 10, 13, 26

*United States v. Ventresca*, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965)……...…10

*Villareal v. State*, 286 S.W.3d 321 (Tex. Crim. App. 2009)………………………………...28

*Wesbrook v. State*, 29 S.W.3d 103 (Tex. Crim. App. 2000)……………………….…..…18

*Yates v. State*, 941 S.W.2d 357 (Tex.App.—Waco 1997, pet. ref'd)………………....36, 38

*Zill v. State*, 355 S.W.3d 778 (Tex. App.—Houston [1st Dist.] 2011, no pet.………...…..21

## Statutes and Constitutions

Tex. Evid. R. 403……………………………………………………………...……..35

Tex. Penal Code Sec. 1.07(a)(40)……………………………………………………33

Tex. Penal Code Sec. 12.42…………………………………………………………...2

Tex. Penal Code Sec. 49.04…………………………………………………..…..29

Tex. Penal Code Sec. 49.09……………………………………………………...2

Tex. R. App. P. 44.2(a)………………………………………………….…..17

Tex. Transp. Code Ann. § 724.061…………………………………….…..15, 22

U.S. Const. amend IV……………………………………………..………10

**Treatises**

W. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment*
§ 11.7(c) at 452 (4th ed. 2004 & Supp. 2009-2010))……………………….……………..11

**CAUSE NO. 03-14-00483-CR**

_____


**IN THE COURT OF APPEALS FOR THE
THIRD DISTRICT OF TEXAS
AUSTIN**


_____


**TERRY LYNN STEVENS,
Appellant**

**V.**

**THE STATE OF TEXAS,
Appellee**


_____


**ON APPEAL FROM CAUSE NO. 41839
424th JUDICIAL DISTRICT COURT OF BURNET COUNTY, TEXAS**


_____


**BRIEF FOR APPELLEE**


_____


TO THE HONORABLE JUSTICES OF THE COURT OF APPEALS:

**COMES NOW** the Appellee, the State of Texas, and files this brief pursuant to the provisions of the Texas Rules of Appellate Procedure in reply to the brief by the Appellant, and in support thereof would show the Court as follows:

## STATEMENT OF THE CASE

The Appellant's statement of the case is largely accurate, but incorrectly describes the contents of the indictment. The indictment contains allegations of four prior convictions against the Appellant: two convictions for offenses relating to the operation of a motor vehicle while intoxicated, making the indicted offense a third degree felony under Sec. 49.09(b)(2) of the Texas Penal Code, and two other sequential felony convictions for driving while intoxicated, enhancing the charged offense to a habitual range of punishment under Sec. 12.42(d) of the Penal Code. Tex. Pen. Code §§12.42, 49.09.

## STATEMENT ON ORAL ARGUMENT

The undersigned requests oral argument. While the undersigned believes that the issues raised by Appellant and addressed herein are straightforward and do not present any novel or complex questions on which oral argument would be beneficial to the Court, Appellant has requested oral argument and the undersigned is willing to participate if the Court believes that oral argument will assist the Court in any way.

## REPLY TO ISSUES PRESENTED

Reply to Issue One:

The trial court properly denied Appellant's motion to suppress evidence of blood test results based on alleged deficiencies in the supporting affidavit. Even if the trial court did err in allowing the blood evidence to be admitted, any such error was harmless in light of the overwhelming evidence of the Appellant's guilt.

Reply to Issue Two:

The evidence that Appellant operated a motor vehicle was legally sufficient to support a finding of guilt by the jury.

Reply to Issue Three:

The trial court applied the necessary balancing test under Rule 403 and properly admitted recordings of Appellant's jail phone calls.

## EXPLANATION OF CITATION OF RECORDS

The Clerk's Record will be cited by page number as "C.R. _____ [page number]." The Court Reporter's Record will be cited by volume and page number as "R.R. Vol. _____ [volume number], p. _____ [page number]" and, where necessary, "l. _____ [line number]."

## STATEMENT OF FACTS

Appellant's statement of the facts is inaccurate or incomplete with respect to certain details relevant to the issues presented.

The charge at issue arose from events occurring at the gated entrance to the Ridgemont Village apartment complex in Burnet County, Texas on the evening of May 9, 2013. R.R. Vol. 3, pp. 29-47. Socorro McCrum, a resident of the complex, was standing outside her apartment and saw a white pickup truck drive in from a public street and pull up to the "code box" controlling the gate at the entrance of the complex. *Id.* at 38-39, 44. A short time later, another car pulled in behind the white pickup truck. *Id.* at 38. Once the gate opened, the second vehicle to arrive drove around the white pickup truck and entered the complex. *Id.* at 40. The white pickup truck then rolled backward into a fence. *Id.* McCrum called the police and stayed in her apartment until Officer Justin Boucher of the Marble Falls Police Department arrived. *Id.* McCrum was not able to see or describe the person driving the white pickup truck. *Id.* at 41. She did not see anyone enter or exit the vehicle until police arrived, and did not see any other persons in the area. *Id.*

Officer Boucher was dispatched to the Ridgemont Village complex at 9:34 p.m. in response to a report that a white pickup truck had backed into a

fence. *Id.* at 49. Boucher arrived at the apartment complex at 9:39 p.m. *Id.* at 50. Boucher saw a white pickup truck backed up against a fence column outside the complex's gate. *Id.* at 52. The truck's brake lights were illuminated when Boucher first observed it. *Id.* at 51, 80. As Boucher approached the truck, Appellant opened the driver's side door and stepped out. *Id.* at 54. Boucher noticed immediately that Appellant was "unstable on his feet" and was "staggering." *Id.* at 54-55. When asked to step away from the vehicle, Appellant "ran into the side mirror" of the truck. *Id.* at 55. Boucher detected the strong odor of an alcoholic beverage and asked Appellant how much he had had to drink that evening, to which Appellant replied "a couple beers." *Id.* at 56; R.R. Vol. 6, State's Exhibit 7. When asked the same question again a short time later, Appellant said "about three beers." *Id.* Boucher asked Appellant whether he had ever been this intoxicated before, to which Appellant replied "No I haven't." *Id.*

Boucher conducted field sobriety tests on Appellant and observed numerous signs of intoxication. R.R. Vol. 3, p. 57-64, 81-90; R.R. Vol. 6, p. 104-105. After attempting unsuccessfully to complete one of the tests, Appellant said to Boucher "Hell, why don't you just arrest me?" R.R. Vol. 3, p. 64; R.R. Vol. 6, State's Exhibit 7. After Appellant was taken into

custody, an opened alcoholic beverage was found in the white truck. R.R. Vol. 3, p. 65.

Boucher transported Appellant to the Marble Falls Police Department, where he read to Appellant the DIC-24 statutory warning and requested a specimen of Appellant's blood. *Id.* at 71. Appellant refused. *Id.* Boucher submitted an affidavit for a search warrant to Judge Don Adams and obtained a warrant for Appellant's blood. *Id.* at 73. A specimen was taken and submitted to the Texas Department of Public Safety crime lab for analysis. *Id.* at 73-80, 117-118. The blood contained an alcohol concentration of 0.25 grams per 100 milliliters. *Id.* at 118.

At trial, Appellant objected to the admission of the blood test results and moved for the court to suppress them, alleging deficiencies in the affidavit. *Id.* at 78-79, 106-107. The trial court found "under the totality of the circumstances that the search warrant affidavit is sufficient" and overruled Appellant's objection that the affidavit was conclusory. *Id.* at 107.

Appellant also objected under Rule 403 to the admission of recorded jail phone calls containing statements by Appellant that he had been "out pulling [his] truck in" and "couldn't get the gate open." R.R. Vol. 4, p. 5-7, 12-21; R.R. Vol. 6, State's Exhibits 13, 14. Appellant argued that the evidence contained on the recordings was cumulative. R.R. Vol. 4, p. 5-6.

The trial court overruled Appellant's objection, finding that the recordings were not cumulative and were relevant to the question of whether the Appellant was driving the vehicle. *Id.* at 6-7.

At the conclusion of evidence the trial court instructed the jury on both meanings of intoxication, i.e., not having the normal use of mental or physical faculties by reason of the introduction of a substance into the body, or having an alcohol concentration of 0.08 or more. *Id.* at 26. The jury found Appellant guilty of felony Driving While Intoxicated as alleged in the indictment. *Id.* at 49. Appellant testified at the punishment phase of trial and admitted to each element of the indicted offense. R.R. Vol. 5, p. 57-58. The State presented evidence that Appellant had been convicted of driving while intoxicated on six prior occasions, four of which were felony offenses. *Id.* at 9-23. The jury assessed a sentence of life. *Id.* at 85.

## SUMMARY OF THE ARGUMENT – REPLY TO ISSUE NO. 1

The trial court properly denied Appellant's motion to suppress evidence of blood test results. The affidavit supporting the warrant to obtain Appellant's blood contained sufficient facts and circumstances from which the magistrate could have found a substantial basis for concluding that a search would uncover evidence of wrongdoing. Even if the trial court did err in allowing the blood evidence to be admitted, any such error was harmless in light of the other overwhelming evidence of the Appellant's guilt.

## ARGUMENT ON REPLY TO ISSUE NO. 1

**I.** **The trial court properly denied Appellant's motion to suppress evidence of blood test results based on alleged deficiencies in the warrant affidavit.**

### A. Standard of Review

A trial court's ruling on a motion to suppress is reviewed on appeal for abuse of discretion. *Crain v. State*, 315 S.W.3d 43, 48 (Tex. Crim. App. 2010). Normally, appellate courts apply this standard in a bifurcated fashion, giving almost total deference to the trial court's determinations of fact, including witness credibility and demeanor, while reviewing *de novo* its applications of law. *State v. McLain*, 337 S.W.3d 268, 271 (Tex. Crim. App. 2011); *Crain*, 315 S.W.3d at 48.

However, a court's after-the-fact scrutiny of the sufficiency of an affidavit should not take the form of *de novo* review. *Swearingen v. State*, 143 S.W.3d 808, 810 (Tex. Crim. App. 2004) (quoting *Illinois v. Gates,* 462 U.S. 213, 234-237, 76 L. Ed. 2d 527, 103 S. Ct. 2317 (1983)). Rather, in the case of a motion to suppress based on a magistrate's decision to issue a search warrant, both trial and appellate courts apply a unique and highly deferential standard of review. *Stovall v. State*, 440 S.W.3d 661, 666 (Tex. App.—Austin 2011, no pet.) (citing *McLain*, 337 S.W.3d at 271); *State v.*

*Webre*, 347 S.W.3d 381, 384 (Tex. App.—Austin 2011, no pet.). So long as the magistrate had a substantial basis for concluding that a search would uncover evidence of wrongdoing, the Fourth Amendment requires no more. U.S. Const. amend. IV; *Swearingen v. State*, 143 S.W.3d 808, 810 (quoting *Gates,* 462 U.S. at 234-237).

The deference paid to the magistrate's determination of probable cause is based on the Fourth Amendment's strong preference for searches conducted pursuant to a warrant. *Id*.; *see also United States v. Ventresca*, 380 U.S. 102, 108, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965) ("[Affidavits for search warrants] are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area. A grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting.")

When an appellate court reviews an issuing magistrate's determination, that court should not analyze the affidavit in a hyper-technical manner but in a commonsensical and realistic manner, recognizing that the magistrate may draw reasonable inferences. *McLain*, 337 S.W.3d at 271; *Rodriguez v. State,* 232 S.W.3d 55, 61 (Tex. Crim. App. 2007). The

magistrate should not be bound by standards such as proof beyond a reasonable doubt or by a preponderance of the evidence; the magistrate's sole concern should be probability. *Johnson v. State,* 803 S.W.2d 272, 288 (Tex. Crim. App. 1990) (citing *Gates,* 462 U.S. at 238-39). While that probability cannot be based on mere conclusory statements of an affiant's belief, reviewing courts, when in doubt, should defer to all reasonable inferences that the magistrate could have made from the facts and circumstances contained within the four corners of the affidavit. *Rodriguez,* 232 S.W.3d at 61; *State v. Jordan*, 342 S.W.3d 565, 569 (Tex. Crim. App. 2011). The magistrate's decision should carry the day in doubtful or marginal cases, even if the reviewing court might reach a different result upon de novo review. *Flores v. State,* 319 S.W.3d 697, 702 (Tex. Crim. App. 2010) (citing W. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 11.7(c) at 452 (4th ed. 2004 & Supp. 2009-2010)).

### B. Argument

In his first point of error Appellant argues that the trial court erred by admitting evidence of blood test results over his objection. At trial, Appellant objected to the admission of blood evidence and blood test results, alleging that the affidavit supporting the warrant to obtain his blood was deficient. R.R. Vol. 3, p. 78, 107. The trial court heard Appellant's

argument outside the presence of the jury, treating Appellant's objection as a motion to suppress. *Id*. at 107. Appellant's counsel argued, in reference to the affidavit, as follows:

> Paragraph Four is conclusory, no facts given to support that conclusion. Paragraph Five, there's [sic] no facts that Terry Lynn Stevens was, in fact, the driver or even operated the motor vehicle in accordance with the law. So based on that, there is no evidence that Terry Lynn Stevens was driving or operating that vehicle inside the four corners of that affidavit and, therefore, the blood should be suppressed.

*Id*. The trial court overruled Appellant's objection, finding "under the totality of the circumstances that the search warrant affidavit is sufficient…." *Id*.

Appellant now argues that "there are no facts to support whether the vehicle in question was in a public rather than private drive, no facts to support whether Appellant was 'operating' the vehicle in question (or in any manner connected to this or any other motor vehicle), and no facts to establish *when* exactly the incident in question happened." Appellant's Brief, p. 18 (emphasis and parenthetical in original).

Assuming, without conceding, that Appellant's trial objection preserved error as to each of the arguments he now advances on appeal, the trial court correctly overruled Appellant's objection. The affidavit, when analyzed in a non-technical, common-sense manner, does contain sufficient facts and circumstances from which the magistrate could have found a substantial basis for concluding that a search would uncover evidence of wrongdoing. *See Swearingen*, 143 S.W.3d at 810.

The affidavit states that Officer Boucher made contact with Appellant at approximately 9:39 p.m. on May 9, 2013. R.R. Vol. 6, p.104. It further states that "the reason for the contact" with Appellant was that Boucher "responded to 92 Gateway North in reference to a vehicle that was stopped at a gate code entry point trying to enter a gate code to enter the property. The complainant advised that the vehicle then slowly rolled backwards and struck a fence." *Id.* The statement that the suspect vehicle was attempting to gain entry to property by entering a "gate code" supports the reasonable inference that the suspect vehicle was being operated in a public place.

It is common knowledge that the purpose of encoded gates is to restrict access to private property, and so the magistrate could have reasonably inferred that the vehicle attempting to gain entry to the gated property was in a public place while stopped at the gate code entry point.

The fact that the vehicle was "trying to enter the property" and "rolled backwards and struck a fence" also supports the inference that the vehicle in question was being operated by some person. Thus a commonsensical, realistic reading of the affidavit supports the conclusion that the suspect vehicle was being operated in a public place.

While it is true that the affiant made no direct statements identifying Appellant as the person operating the vehicle, the reviewing magistrate could have inferred from the facts and circumstances set forth in the affidavit that the Appellant was reasonably likely to have been operating the vehicle. The affidavit's description of the vehicle's movements (i.e., slowly rolling backward and striking a fence after being stopped at a gate code entry point trying to enter the property) indicate that the person operating the vehicle – whoever that may have been – was intoxicated or otherwise impaired. The magistrate could then have inferred that there was a reasonable probability that Appellant was the person who had been operating the vehicle, based on the fact that Boucher made contact with Appellant as a result of the reported accident and observed numerous signs of intoxication in Appellant while responding to the complaint. *Id.*

The affidavit stated that Appellant staggered and was unsteady when walking; he swayed and used support when balancing; his speech was

slurred and incoherent; his eyes were bloodshot; Boucher detected the strong odor of an alcoholic beverage while talking with him; he performed poorly on field sobriety tests. *Id.* Finally, Appellant refused to voluntarily provide a blood sample. *Id. See Stovall*, 440 S.W.3d at 668, n.7 (citing Tex. Transp. Code Ann. § 724.061) ("The magistrate could also have inferred that Stovall had driven while intoxicated from his refusal to submit to a breath test.")

In other words, that facts in the affidavit describing Appellant's intoxication are circumstantial evidence that Appellant was the person who had been operating the erratically driven vehicle also described in the affidavit, and the magistrate could have concluded that the nexus between those facts provided a substantial basis to support a finding of probable cause.

Appellant also argues that the affidavit contains no facts to establish when exactly the incident in question happened, and that Officer Boucher could have been dispatched to take a report about an incident that happened at some point much earlier in time. A common-sense analysis of the affidavit makes this scenario implausible and supports the conclusion that the reported auto accident had occurred shortly before Boucher's response.

It is common knowledge that complainants who have witnessed auto accidents generally call authorities immediately to report the incident. It is

also common knowledge that authorities generally respond promptly to complaints relating to auto accidents. *See Stovall*, 440 S.W.3d at 667-68 (discussing common knowledge relating to the promptness of police dispatch for auto accidents). Furthermore, Boucher responded to the witnessed accident at 9:39 p.m. R.R. Vol. 6, p. 104. It is particularly unlikely that a person witnessing an auto accident would wait until such a late hour of the night to call authorities, or that a law enforcement agency would delay response until such an hour.

Thus the affidavit, analyzed in a realistic manner and in light of common knowledge and experience, sets out sufficient facts and circumstances on its face from which the magistrate could have reasonably inferred that Appellant was operating the vehicle just prior to the complainant's report and Boucher's response to the scene of the incident. Furthermore, since Boucher responded to the report at 9:39 p.m., observed signs of intoxication in Appellant, and submitted the affidavit to the magistrate at 10:30 p.m. on the same date, the magistrate had a substantial basis to determine that evidence of intoxication would still be present in Appellant's blood when the warrant was issued. *Id.*

For the foregoing reasons, deferring to all reasonable inferences that the magistrate could have made in finding probable cause to issue the

warrant, the trial court did not abuse its discretion by overruling Appellant's objection and admitting evidence of blood test results.

## II.    If the trial court did err in admitting the evidence of blood results, any such error was harmless in light of the overwhelming evidence of Appellant's intoxication.

### A. Standard of Review

The harm analysis for the erroneous admission of evidence obtained in violation of the Fourth Amendment is Texas Rule of Appellate Procedure 44.2(a)'s constitutional standard. *Hernandez v. State*, 60 S.W.3d 106, 108 (Tex. Crim. App. 2001); Tex. R. App. P. 44.2(a). Rule 44.2(a) requires the reversal of a judgment of conviction unless it can be determined beyond a reasonable doubt that the error did not contribute to the conviction. Tex. R. App. P. 44.2(a). In applying the harmless error test, a reviewing court's primary question is whether there is a reasonable possibility that the error might have contributed to the conviction. *Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998). In answering that question, the reviewing court should evaluate the entire record in a neutral, impartial, and even-handed manner and calculate as much as possible the probable impact of the erroneously admitted evidence on the jury in light of the existence of other

evidence. *Harris v. State*, 790 S.W.2d 568, 586 (Tex. Crim. App. 1989); *Wesbrook v. State*, 29 S.W.3d 103, 119 (Tex. Crim. App. 2000).

### B. Argument

If this Court were to find that Appellant's objection should have been sustained and the evidence of Appellant's blood test results should have been suppressed, any error resulting from the admission of the evidence was harmless. Even disregarding the blood test results, the evidence of Appellant's intoxication was overwhelming. Officer Boucher testified that he had special training relating to detecting signs of intoxication and that, based on his training and experience, he was "100 percent sure that [Appellant] was intoxicated" due to having lost the use of his mental or physical faculties. R.R. Vol. 3, p. 48, 64, 99. *See Annis v. State*, 578 S.W.2d 406, 407 (Tex. Crim. App. 1979) (reasoning that an officer's testimony that a person was intoxicated provided sufficient evidence to establish the element of intoxication).

In addition to Boucher's testimony establishing Appellant's intoxication, the jury also viewed a video recording of Boucher's interaction with Appellant. R.R. Vol. 3, p. 66-68. The video clearly shows all the visible signs of intoxication described by Boucher. *See* R.R. Vol. 6, State's Exhibit 7.

Upon making contact with appellant, Boucher "noticed immediately that [Appellant] was unstable on his feet. He was staggering." R.R. Vol. 3, p. 54-55. Boucher detected the odor of an alcoholic beverage, saying "the alcohol odor was so strong that I was able to detect it from a pretty good distance away." *Id.* at 55. When Boucher asked Appellant to step away from the vehicle, Appellant "ran into the side mirror of his vehicle" and appeared not to realize that he had done so. *Id.* at 55-56. Appellant had "slurred, lethargic speech." *Id.* at 99. Boucher further testified that Appellant was "unable to maintain his balance. He was falling over." *Id.* *See Cotton v. State*, 686 S.W.2d 140, 142 n.3 (Tex. Crim. App. 1985) (providing a nonexclusive list of signs recognized as evidence of intoxication, including slurred speech, odor of alcohol on the person, unsteady balance, and a staggering gait). Appellant also admitted to Boucher that he had "a couple" beers, and later admitted to having "three" beers. R.R. Vol. 3, p. 56; *See* R.R. Vol. 6, State's Exhibit 7. After placing Appellant under arrest, Boucher found an 18-ounce can of Bud Ice beer in the white truck Appellant had been operating. R.R. Vol. 3, p. 65. Approximately a third of the beer was left in the container. *Id.* When asked where he lived, Appellant transposed two of the numbers in his street address. *Id.*

Appellant's actions and demeanor also demonstrated a consciousness of guilt. During his contact with Boucher, Appellant persistently apologized to Boucher and begged to be permitted to go home. R.R. Vol. 6, State's Exhibit 7; R.R. Vol. 3, p. 100. *See Hyde v. State*, 846 S.W.2d 503, 505 (Tex. App.—Corpus Christi 1993, pet. ref'd) (holding that "any conduct on the part of a person accused of a crime subsequent to its commission, which indicates a 'consciousness of guilt,' may be received as a circumstance tending to prove that he committed the act with which he is charged.").

Boucher also gave extensive testimony about Appellant's poor performance on several field sobriety tests. R.R. Vol. 3, p.56-64, 81-90. While attempting to perform the horizontal gaze nystagmus (HGN) test, Appellant was unable to maintain his balance and had to be asked to get back into position numerous times. *Id.* at 59. Appellant was also unable to follow the stimulus with his eyes numerous times. *Id.* at 81. Boucher testified that he looks for six clues with the HGN test to determine whether a person is intoxicated, and that he observed all six clues in Appellant. *Id.* at 59-60. Boucher next attempted to perform the walk and turn test. *Id.* at 60-63. He testified that while he was explaining the instructions Appellant was "unable to maintain his balance again, falling over, unable to keep his right foot in front of his left foot with his hands down to his side." *Id.* at 61. Boucher

testified that out of a possible eight clues he looks for a minimum of four clues to determine whether a person is intoxicated. *Id.* at 62. In Appellant he observed "six or seven" clues. *Id.* *See Zill v. State*, 355 S.W.3d 778, 786 (Tex. App.—Houston [1st Dist.] 2011, no pet.) ("A defendant's poor performance on the standardized field sobriety tests is further evidence of intoxication").

After several failed attempts to perform the walk and turn test, Appellant turned to Boucher and said, "Hell, why don't you just arrest me?" R.R. Vol. 3, p. 56; R.R. Vol. 6, State's Exhibit 7. Boucher then testified that he did not attempt to perform the "one leg stand" test, saying that "[d]ue to [Appellant's] high level of intoxication I felt for his safety that he did not need to proceed with that due to him not being able to maintain his balance and continuing to fall over." R.R. Vol. 3, p. 63. Boucher also testified that it is very difficult to perform field sobriety tests on a person who is extremely intoxicated because they are "not able to follow your instructions. They're not able to maintain their balance or stand up on their own without falling over, so you have to continuously repeat things one after another." *Id.* at 100. This is precisely what the jury saw on the video of Boucher's interaction with Appellant. *See* R.R. Vol. 6, State's Exhibit 7.

The jury also heard evidence that Appellant refused to voluntarily provide Boucher with a sample of his blood, choosing instead to accept the legal consequences that accompany a refusal. R.R. Vol. 3, p. 71; R.R. Vol. 6, State's Exhibit 8. A person's refusal to submit a blood sample to a requesting officer can be used as evidence against him at trial. *See* Tex. Transp. Code Ann. § 724.061; *Ashford v. State*, 658 S.W.2d 216 (Tex. App. Texarkana 1983). Appellant even admitted to being intoxicated. When Boucher asked Appellant "Have you ever been this intoxicated before?" Appellant answered, "No I haven't." R.R. Vol. 6, State's Exhibit 7.

Finally, the State admitted evidence at trial that Appellant had made several phone calls from jail prior to trial, and played recorded audio of two of those calls for the jury. R.R. Vol 4, p. 12-21. *See* R.R. Vol. 6, State's Exhibits 13 & 14. Both calls feature the Appellant having a conversation with a woman named Shirley Brown. R.R. Vol. 4, p. 15-16. On one of the calls, the following exchange takes place:

> Appellant: And, uh, you know, he pulled in, I had the door open, was getting out of the pickup when he pulled in. I had my legs out, because I couldn't get the gate open, and I said the hell with it I'll just park it here and leave it here and get you to come get it, or you know…

Brown: Yeah.

Appellant: I was just going to walk down and grab the remote and bring the truck and park it behind the garage, or in front of the garage, but…

Brown: Why did you get started on the liquor?

Appellant: It was cheap. It was cheap.

Brown: Yeah, but you know it makes you crazy.

Appellant: I wasn't crazy that night. I wasn't even arguing with you that night.

Brown: You were crazy.

R.R. Vol. 6, State's Exhibit 13. This conversation clearly references the events on the night of Appellant's arrest for this charge. Brown's question about Appellant's drinking and her statements that liquor makes him "crazy" and that he was "crazy" on the night in question are significant additional evidence of Appellant's intoxication.

In light of the overwhelming evidence detailed above, even disregarding the blood test results the jury would have found that appellant was intoxicated beyond a reasonable doubt by not having the normal use of his mental or physical faculties by reason of the introduction of alcohol into his body.

Furthermore, the blood draw evidence was not unduly emphasized by the State at trial. On the contrary, the State stressed in closing argument that it was not necessary for the jury to consider the blood evidence to find Appellant guilty, saying:

> Some of you may be thinking, man, this seems like a pretty easy case, right? [ . . . ] Why are we doing all this stuff with scientist [sic] and blood? I mean, we could have really just played that video, let you see with your own eyes the defendant clearly intoxicated . . . and sat down and let you have the case.

R.R. Vol. 4, p. 33. The State then emphasized the evidence showing that Appellant was intoxicated by having lost the normal use of his mental or physical faculties, saying:

> Y'all saw that with your own eyes. You saw him get out of that truck. You saw him staggering around. You saw him bumping into the mirror. You saw him unable to even stand in one place when the officer was giving him the instructions on how to perform the test. You heard that he had failed those field sobriety test [sic]. So we can check off the box that he was intoxicated.

*Id*. at 36.

Additionally, in his closing argument, Appellant's trial counsel seemed to acknowledge the overwhelming evidence of Appellant's intoxication, even in the absence of the blood evidence. He urged the jurors to discount the blood evidence and then said,

> Now, the State is going to say, well, if you don't believe that, you've got the video. All right. Well, we can see intoxication. *He was intoxicated*, but the point I'm getting at with all this is the State has to prove and make sure all protocols are followed. [ . . . ] What if the issue is about blood? *You don't have the video* [ . . . ] [a]nd then you get a not guilty on an intoxication assault because they didn't follow the protocols."

*Id*. at 42 (emphasis added). In response to defense counsel's argument, the State again argued that the critical evidence was on the video, saying, "We all saw it. We all know it. The defense just said it, that man was intoxicated. Clearly." *Id*. at 47.

The jury was properly instructed that the State could prove Appellant was intoxicated by not having the normal use of his mental or physical faculties by reason of the introduction of alcohol, *or* by having an alcohol concentration of 0.08 or more. *Id*. at 26; C.R. 28. When the jury is authorized to convict on any one of several theories or methods of

commission of the same offense and returns a general verdict of guilt, it does not matter that the evidence is insufficient to sustain one or more of the theories, so long as the evidence is sufficient to sustain conviction under at least one theory. *Swearingen v. State*, 101 S.W.3d 89, 95 (Tex. Crim. App. 2003) (citing *Rabbani v. State*, 847 S.W.2d 555, 558-59 (Tex. Crim. App. 1992), cert. denied, 509 U.S. 926, 113 S.Ct. 3047, 125 L.Ed.2d 731 (1993)).

Reviewing the entire record in a neutral manner, the other evidence of Appellant's intoxication was so overwhelming that there is no reasonable possibility that any error by the trial court in admitting the blood test results might have contributed to Appellant's conviction. The trial court's denial of Appellant's motion to suppress was harmless in light of the overwhelming evidence of Appellant's intoxication. Appellant's first point of error should be overruled.

## SUMMARY OF THE ARGUMENT – REPLY TO ISSUE NO. 2

The evidence that Appellant operated a vehicle in a public place was legally sufficient to support his conviction for driving while intoxicated. The jury heard testimony from two eyewitnesses that, taken together, supports the rational inference that Appellant had been operating the vehicle in question. The State also admitted evidence of jail phone calls containing admissions from Appellant that he had been operating a vehicle at the time of his arrest. From this evidence, a rational trier of fact could have concluded beyond a reasonable doubt that the State proved that Appellant had operated a vehicle.

## ARGUMENT ON REPLY TO ISSUE NO. 2

**I. The evidence of the driving while intoxicated element of "operation" was sufficient to support a finding of guilt by the jury.**

**A. Standard of Review**

In determining the legal sufficiency of the evidence to support a conviction, an appellate court must consider all of the record evidence in the light most favorable to the verdict and must determine whether, based on that evidence and reasonable inferences therefrom, any rational trier of fact could have found the defendant guilty of all the elements of the offense beyond a reasonable doubt. *Villareal v. State*, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009) (citing *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)). This standard accounts for the factfinder's duty "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 319). When the record supports conflicting inferences, the appellate court should presume that the factfinder resolved the conflicts in favor of the prosecution and defer to that determination. *Clayton*, 235 S.W.3d at 778 (citing *Jackson*, 443 U.S. at 326). Direct and circumstantial evidence are

treated equally: "Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt." *Clayton*, 235 S.W.3d at 778 (quoting *Hooper v. State*, 214 S.W.3d 9, 16-17 (Tex. Crim. App. 2007)).

## B. Argument

A person commits driving while intoxicated if the person is intoxicated while operating motor vehicle in a public place. Tex. Penal Code Ann. § 49.04(a). The Penal Code does not define the term "operate." *Denton v. State*, 911 S.W.2d 388, 389 (Tex. Crim. App. 1995). The Court of Criminal Appeals has held that a person operates a vehicle when the totality of the circumstances demonstrates "that the defendant took action to affect the functioning of his vehicle in a manner that would enable the vehicle's use." *Id*. at 390.

In the case at bar, the State presented ample evidence to show that Appellant operated a vehicle. Socorro McCrum testified that on the evening of May 9, 2013 she saw a white pickup truck drive in from a public street and pull up to the "code box" controlling the gate at the entrance to the Ridgemont Village community, where she was a resident. R.R. Vol. 3, p. 31-39, 44. The truck's headlights were on. *Id*. at 38. The truck stayed next to the code box for "a minute or so" until another vehicle pulled in behind the

truck and waited for the gate to open. *Id*. McCrum heard a female voice from the second car yell out the gate code, and then heard the gate open. *Id*. at 40. The second vehicle then "went in reverse a little bit so that she could go around the truck" and entered the property through the gate. *Id*. The white truck's lights went off and the truck started moving in reverse. *Id*. McCrum then testified that she saw the truck's red brake lights illuminate and "it kind of went back with an impact and hit the fence." *Id*. McCrum went into her apartment to call the police. *Id*. Officer Boucher arrived four or five minutes later. *Id*. at 49-50. McCrum went back outside when the police arrived and saw them take a man out of the same truck she had earlier seen pulling in and attempting to open the gate. *Id*. at 41-42. McCrum also testified that from the moment she first saw the white truck until the police arrived she never saw anyone else walking around the area, and never saw anyone get into or out of the truck. *Id*. at 41.

Officer Boucher was dispatched to the Ridgemont Village community after receiving a report from dispatch that a white pickup truck had been parked at the gate code box and then moved backward into a fence. *Id*. at 49. When he arrived he saw a white pickup truck backed into a parking space, up against a white stone fence column. *Id*. at 49-50, 52. It was the only vehicle in sight matching the description given to Boucher. *Id*. at 51. The truck's

doors were closed and its brake lights were illuminated. *Id.* Boucher parked his patrol unit and saw Appellant open the door and exit the driver's side of the truck. *Id.* at 54-55.

During Boucher's interaction with him, Appellant claimed ownership of the white truck and was found to be in possession of the keys to the truck. *Id.* at 69; R.R. Vol. 6, State's Exhibit 7. Appellant asserted that he had not been in his truck, that Boucher had never seen him in his truck and had never seen him driving, but never claimed that anyone else had been driving his truck. R.R. Vol. 3, p. 68-69. Appellant's claim that he had not been in the truck were inconsistent with Boucher's own observation. *Id.*

Officer Boucher directly observed the operation of the white truck's brake lights immediately before Appellant emerged from the driver's seat and was found to be intoxicated. Even if the operation of the truck's brakes did not itself constitute operation of the vehicle, the combined testimony of McCrum and Boucher and the reasonable inferences therefrom could have led a rational trier of fact to conclude that Appellant had been operating the vehicle when it entered from the street, pulled up to the gate code box, turned off its headlights, and moved backward into the fence. Appellant emerged from the driver's side of the same truck McCrum had seen pulling up to the gate code box and rolling backward into the fence. No one else

was seen entering or exiting the truck and Appellant did not claim that anyone else had been operating the vehicle prior to Boucher's arrival. Also, it is particularly reasonable to infer Appellant's operation of the white truck during this time since he was found to be highly intoxicated and McCrum's observation of the truck's movement is entirely consistent with its operation by a highly intoxicated person.

Additionally, the jury heard evidence of Appellant's operation of the vehicle from Appellant himself in the form of recorded jail phone calls. The state admitted recordings of two of Appellant's jail phone calls into evidence and played both for the jury. R.R. Vol. 4, p. 12-21. On the first, Appellant can be heard telling Shirley Brown that "I couldn't get the gate open, and I said the hell with it, I'll just park it here and leave it here and get you to come get it." R.R. Vol. 6, State's Exhibit 13. On the second phone call, Appellant can be heard saying "I went out to get the truck to bring it in and I couldn't get the gate open…I got pissed off, I backed it up, parked it." R.R. Vol. 6, State's Exhibit 14.

The context of these statements makes it evident that Appellant is describing his operation of the white truck on the evening of May 9, 2013, when he was arrested for driving while intoxicated. Having heard these Statements from Appellant, a rational trier of fact could certainly have

concluded beyond a reasonable doubt that Appellant had been operating the white truck on the night in question. And since McCrum and Boucher both testified that the area where they saw the white truck was a place where the public or a substantial group of the public has access, the evidence at trial was legally sufficient to show that Appellant operated the vehicle in a public place. R.R. Vol. 3, p. 36, 52-53. *See* Tex. Penal Code Sec. 1.07(a)(40). As such, the evidence was sufficient to sustain a conviction in this case and Appellant's second point of error should be overruled.

## SUMMARY OF THE ARGUMENT – REPLY TO ISSUE NO. 3

The trial court properly admitted recordings of jail phone calls over Appellant's Rule 403 objection, since the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice. In making its ruling, the trial court applied the appropriate balancing test under Rule 403.

## ARGUMENT ON REPLY TO ISSUE NO. 3

**I.      The trial court properly overruled Appellant's objection under Rule 403, since the probative value of the evidence was not substantially outweighed by its prejudicial effect. A trial court is assumed to have applied the necessary balancing test in overruling a Rule 403 objection, and the balancing test need not be performed on the record.**

### A. Standard of Review

A trial judge has broad discretion in admitting or excluding evidence. *Mozon v. State*, 991 S.W.2d 841, 846 (Tex. Crim. App. 1999). A trial judge, however, may exercise her discretion in excluding evidence only when its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, by considerations of undue delay, or needless presentation of cumulative evidence. Tex. Evid. R. 403; *see also Gilbert v. State,* 808 S.W.2d 467, 471-72 (Tex. Crim. App. 1991). In reviewing the trial court's balancing test determination, a reviewing court is to reverse the trial court's judgment "rarely and only after a clear abuse of discretion." *Montgomery v. State*, 810 S.W.2d 372, 389 (Tex. Crim. App. 1991).

Rule 403 does not require that the balancing test be performed on the record. *Hitt v. State*, 53 S.W.3d 697, 706 (Tex.App.—Austin 2001) (citing *Yates v. State*, 941 S.W.2d 357, 367 (Tex.App.—Waco 1997, pet. ref'd). In overruling a Rule 403 objection the trial court is assumed to have applied a Rule 403 balancing test and determined the evidence was admissible. *Id.*; *Poole v. State*, 974 S.W.2d 892 (Tex.App.—Austin 1992). The reviewing court, however, cannot simply conclude "the trial judge did in fact conduct the required balancing and did not rule arbitrarily or capriciously." *Yates*, 941 S.W.2d at 392. The trial court's ruling must be measured against the relevant criteria by which a Rule 403 decision is made. *Id.* In other words, the reviewing court must look at the proponent's need for the evidence in addition to determining the relevance of the evidence. *Id.* at 392-93.

**B. Argument**

Appellant is wrong to assert that the trial court in the instant case did not conduct a balancing test under Rule 403 as it was required to do, and is therefore also incorrect to contend that the trial court admitted the evidence without any guiding rules or principles and abused its discretion. Appellant's trial counsel objected outside the presence of the jury to the introduction of the aforementioned recordings of jail calls under Rule 403, arguing that the recordings were cumulative with respect to the issue of

Appellant's operation of the vehicle and prejudicial since they showed that Appellant was in custody when the calls were recorded.  R.R. Vol. 4, p. 5. The State argued that the recordings were not cumulative, but were uniquely probative of Appellant's operation of the vehicle in question.  *Id*. at 5-6.  The trial court overruled Appellant's objection, saying:

> Because the Court thinks it is an issue that's been made as to whether he was driving the vehicle, the court is going to overrule your objection and I find that it's not cumulative for that reason because that has become an issue as to whether he was the driver in this matter, so your objection is overruled.

*Id*. at 6-7.

In overruling Appellant's objection, the trial court implicitly held that the probative value of the recorded jail calls with respect to the issue of Appellant's operation of the vehicle in question was not substantially outweighed by any danger of unfair prejudice relating to the Appellant's presence in custody at the time they were made.  The contents of the jail calls, as detailed above in the State's reply to Appellant's first and second points of error, were highly and uniquely probative of the fact that Appellant was operating the white truck on the evening of his arrest.  The other evidence that Appellant was operating the vehicle, while substantial, was

largely circumstantial, requiring the jury to draw inferences from the combined testimony of McCrum and Boucher. The jail phone calls, however, contained admissions by Appellant that he had been operating the white truck. And the asserted prejudicial effect, i.e., that the introduction of jail calls shows the jury that Appellant was in custody, is not sufficient to substantially outweigh the recordings' probative value. The jury had already been presented with evidence showing that Appellant was taken into custody on the night of the offense.

The trial court did not abuse its discretion in overruling Appellant's objection under Rule 403, since the probative value of the evidence was not substantially outweighed by any danger of unfair prejudice resulting from its admission. The trial court is presumed to have applied the required balancing test, and Rule 403 does not require that the balancing test be performed on the record. *See Yates*, 941 S.W.2d at 367. Appellant's third point of error should be overruled.

## PRAYER FOR RELIEF

**WHEREFORE, PREMISES CONSIDERED,** the State prays the Court deny Appellant's appeal and affirm the judgment of the trial court.

Respectfully submitted,

OFFICE OF THE DISTRICT ATTORNEY
33rd and 424th JUDICIAL DISTRICTS
Wiley B. McAfee, District Attorney
P.O. Box 725
Llano, Texas 78643
Telephone: (325) 247-5755
Telecopier: (325) 247-5274

/s/ R. Blake Ewing

By: _____

R. Blake Ewing
Assistant District Attorney
State Bar No. 24076376
ATTORNEY FOR APPELLEE

## CERTIFICATE OF COMPLIANCE

This is to certify that the pertinent portion of this brief contains 7,480 words printed in Times New Roman 14-point font, according to the Microsoft Word™ 2013 word count tool.

/s/ R. Blake Ewing

_____

R. Blake Ewing

## CERTIFICATE OF SERVICE

This is to certify that a true copy of the above and foregoing instrument, together with this proof of service hereof, has been forwarded on the 27th day of July, 2015, to Mr. Tracy D. Cluck, Attorney for Appellant, by email at tracy@tracyclucklawyer.com

/s/ R. Blake Ewing

_____

R. Blake Ewing
Assistant District Attorney